UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| BRADFIELD INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 6:11-03189-CV-DGK |
| | ) | |
| LAND O'LAKES PURINA FEED, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER COMPELLING ARBITRATION

This case arises out of a written license agreement between Plaintiff Bradfield Industries, Inc. ("Bradfield") and Defendant Land O'Lakes Purina Feed, LLC ("LOLPF"). Plaintiff alleges that Defendant misappropriated its trade secrets, formulas, and specialized knowledge.

Currently pending is Defendant's Motion to Stay Action and Compel Arbitration as to Plaintiff's misappropriation claims (Doc. 10). The Court has reviewed Defendant's Suggestions in Support (Doc. 11), Plaintiff's Response in Opposition (Doc. 16), Defendant's Reply Suggestions (Doc. 17), Plaintiff's Request for Oral Argument Suggestions (Doc. 18), and Defendant's Response to Plaintiff's Request for Oral Argument (Doc. 19).

Plaintiff's request for oral argument is denied. For the following reasons, Defendant's Motion to Stay Action and Compel Arbitration is GRANTED.

**Background**

Plaintiff Bradfield is a Missouri corporation engaged in the business of distributing natural horticultural products. Defendant LOLPF is a Delaware corporation engaged in the business of producing and distributing animal feed and other agricultural products.

Prior to 2004, LOLPF produced horticultural products for Bradfield using Bradfield's labels. Bradfield then independently sold those products to its customers. In 2003, LOLPF and Bradfield began negotiating a contract under which Bradfield would license its trademarks, formulas, and technology related to its natural horticulture products and Bradfield would sell those products for LOLPF under LOLPF's own label. From early 2003 to November 2004, the parties negotiated the terms of the licensing agreement. During this time, LOLPF's primary contact was Bradfield's President and Co-Owner, Robert Scott. According to LOLPF, Mr. Scott represented to them that he had engaged in "extensive discussions" with Bradfield's other Co-Owner, John Barnard regarding the terms of the proposed agreement. In November 2004, the parties reached an agreement, set forth in a contract identified as a "Trademark License, Technology and Know-How License, and Sales Services Agreement" ("License Agreement"). Mr. Scott signed the contract on November 11, 2004 and LOLPF signed the contract the following day.

Under the License Agreement, Bradfield provided LOLPF with an "indefinite license to receive and use Bradfield's Know-How to manufacture, distribute, and market natural horticultural products" (Doc. 10). Bradfield also agreed to serve as a sales agent for LOLPF, promoting, selling, and servicing the natural horticultural products LOLPF produced with the licensed assets. In return, LOLPF was required to pay Bradfield a technology royalty fee, consulting fees, and service fees. Under Section 4 of the License Agreement, Bradfield was required to meet or exceed annual sales targets. If Bradfield failed to meet these targets, the License Agreement allowed LOLPF to terminate the agreement and within thirty days exercise its option to purchase all of Bradfield's rights, title, and interest in the licensed assets for a price of $1.00.

The License Agreement also provided that it would be governed by and construed according to Minnesota or federal trademark law, where applicable. It included the following mandatory arbitration provision:

> In the event the parties are unable to negotiate a mutually agreeable resolution [to] any dispute, then any such dispute shall then be determined in binding arbitration, to be conducted in Minneapolis, MN. The arbitration shall be conducted in accordance with the commercial dispute rules and regulations of the American Arbitration Association. The arbitration shall be held before a panel of three arbitrators, one of which shall be picked by each party with the third to be [third arbitrator to be] picked by the other two arbitrators. The decision and award of the arbitrators shall be final and binding upon the Parties and it may be entered in any court of appropriate jurisdiction.

LOLPF and Bradfield conducted business for approximately five years, from November 2004 to August 2009. During that time, Bradfield allowed LOLPF to use its trademarks, formulas, technology, and know-how to produce natural horticultural products and also served as a sales agent for these products. In return, LOLPF compensated Bradfield under the terms of the agreement, paying a total of $577,400 over the almost five-year period. LOLPF also reimbursed Bradfield for costs and expenses associated with selling the natural horticultural products.

On August 29, 2009, after Bradfield failed to achieve the minimum specified sales targets, LOLPF sent a letter to Bradfield notifying Bradfield of its intention to terminate the License Agreement and exercise its option to purchase all of Bradfield's rights, title, and interest in the licensed assets for $1.00. Bradfield disputed LOLPF's exercise of its purchase option, and in a letter dated September 1, 2009, "rejected" LOLPF's "offer" to purchase all claimed ownership rights. The parties continued to correspond regarding the purchase for the next two months, failing to reach an agreement. Bradfield's attorney sent the final communication between the parties on October 18, 2010 asserting that the License Agreement was void because

it was not passed by corporate resolution, was signed by a representative who lacked authority to bind the company, and was entered into in bad faith. The letter also notified LOLPF of Bradfield's intention to take legal and equitable remedies to protect its interest.

On May 4, 2011, Plaintiff filed an action against LOLPF in the Greene County Circuit Court alleging that LOLPF misappropriated trade secrets by exercising the purchase option contained in the License Agreement. Defendants removed the action to this Court on May 25, 2011 (Doc. 1). The parties contest whether the License Agreement is valid and whether the parties are obligated to submit their claims to arbitration. Defendants request that the Court compel the parties to arbitrate the dispute pursuant to the Federal Arbitration Act and the arbitration clause in the licensing agreement and to stay this case pending disposition of the arbitration.

### Standard

The Federal Arbitration Act ("FAA") makes enforceable a written arbitration provision "in a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. Congress enacted the FAA to overcome courts' traditional reluctance to enforce arbitration agreements. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270 (1995). Section 2 of the FAA provides that arbitration agreements are presumptively valid and enforceable[1] and embraces a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The FAA permits a district court to issue an order compelling parties to arbitrate a dispute subject to an arbitration agreement. 9 U.S.C. § 4. The FAA also provides for stays of proceedings in federal district courts when an issue is referable to arbitration and for

---

[1] "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991).

## Discussion

**A.     The License Agreement is a Valid Contract Between Bradfield and LOLPF.**

Plaintiff argues that it cannot be bound by the arbitration provision in the License Agreement because the contract itself is a nullity. Supporting its assertion, Plaintiff maintains that the License Agreement is invalid because it purported to dispose of all or substantially all of Bradfield's assets without the required shareholder approval. Plaintiff also alleges that the License Agreement is void because Bradfield's President lacked the authority to bind Bradfield to an indefinite license or a sale of Bradfield's trade secrets.

As a general rule, the United States Supreme Court has held that in considering the validity of arbitration clauses where a party claims the underlying contract is invalid, challenges to the validity of the underlying contract should be decided by an arbitrator. *Buckeye Check Cashing, Inc. v. Cardengna*, 126 S. Ct. 1204, 1208 (2006). This decision, however, does not address the situation at issue here, where a party claims the agent entering into the agreement was not vested with the proper authority to bind the principal to the contract. *Id.* at n.1 ("The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and oblige was ever concluded. Our opinion today addresses only the former, and does not speak to . . . whether the signor lacked authority to commit the alleged principal."). Where a party disputes the authority of a corporate agent in executing a contract containing an arbitration provision, the determination of arbitrability is for the court. *Sandvik AB v. Advent Intern. Corp.*, 220 F.3d 99, 107-08 (3d Cir. 2000). Thus, whether an agreement to arbitrate was

5
Case 6:11-cv-03189-DGK   Document 24   Filed 10/26/11   Page 5 of 10

ever formed is a threshold issue that must be resolved by the court. *See Granite Rock Co. v. Intern. Brotherhood of Teamsters*, 130 S. Ct. 2847, 2855-60 (2010).

Plaintiff first argues that the License Agreement is invalid because it was not approved by an affirmative vote of at least two-thirds of its shareholders pursuant to Mo. Rev. Stat. § 351.400. The Court finds this argument without merit.

Section 351.400 is designed to protect the interests of a corporation's shareholders. *Wooster Republican Printing Co. v. Channel 17, Inc*., 533 F. Supp. 601, 617 (W.D. Mo. 1981), *aff'd*, 682, F.2d 165 (8th Cir. 1982); *Still v. Travelers Indemn. Co*., 374 S.W.2d 95, 100 (Mo. 1963). "For that reason, the failure of the corporate seller to comply with the technical requirements of the statute is not fatal to the sale of assets as long as the primary purpose of the statute has been achieved." *Wooster*, 583 F. Supp. at 617-18. Thus, where two-thirds of the corporations shareholders consent to a transaction, even in an informal manner, the purpose of § 351.400 is met and the transaction is enforceable. *Id*. at 618.

Plaintiff maintains that at the time the License Agreement was signed, Bradfield had approximately forty shareholders. However, this is a generalized allegation; Plaintiff has provided no evidence identifying these shareholders or their ownership interests. *See Gallagher v. Magner*, 619 F.3d 823, 838 (8th Cir. 2010) (noting that conclusory allegations are insufficient to create a genuine issue). In addition, Defendant has provided evidence that in negotiating the License Agreement, Mr. Scott represented to LOLPF that he and Mr. Barnard were co-owners of Bradfield (Doc. 10, Affidavit of Richard T. Sundal). The October 8, 2010 letter from Mr. Barnard's attorney to LOLPF confirms that Scott and Barnard each owned 50% of Bradfield (Doc. 10, Exhibit E). This letter, along with emails from Mr. Scott to LOLPF's agent, also confirms that both Mr. Scott and Mr. Barnard were aware of the License Agreement at the time it

6
Case 6:11-cv-03189-DGK   Document 24   Filed 10/26/11   Page 6 of 10

was entered. *Id*. In addition, Mr. Scott represented to LOLPF that he had engaged in extensive discussions with Mr. Barnard regarding the plan and had shared the agreement with Mr. Barnard and would wait to sign before receiving his approval (Doc. 10, Affidavit of Richard T. Sundal). Thus, Mr. Scott and Mr. Barnard's consent satisfies the two-thirds shareholder approval requirement, satisfying the purpose of Section 351.400. Accordingly, the Court finds Plaintiff's argument unpersuasive to show that the transaction is invalid and unenforceable.

Plaintiff also argues that the License Agreement is void because Mr. Scott lacked either the actual or apparent authority to bind the corporation on a contract purporting to grant an indefinite license or to sell substantially all of the corporation's assets. Mr. Scott lacked actual authority, Plaintiff maintains, because Missouri law grants express authority to sell or dispose of the majority of corporate assets only following shareholder approval. Similarly, Plaintiff maintains that Mr. Scott lacked implied authority because such authority exists only when an officer of a corporation is acting "in the ordinary course of business" and sale of all the corporation's assets are not in the ordinary course.

The ordinary course of business encompasses those transactions arising from "the inherent nature of the business in question and in the methods systematically employed for the conduct of the business as a business." *Palmer v. Hoffman*, 318 U.S. 109, 115 (1943). The Missouri Supreme Court has noted that a transaction will always fall outside the ordinary course of business when it is a sale that "constitutes an act of self-destruction and a practical dissolution" of the corporation. *Santa Fe Hills Golf & Country Club v. Safehi Realty Co.*, 349 S.W.2d 27, 35-36 (Mo. 1961). However, the License Agreement did not constitute an act of self-destruction for Bradfield. Rather, it gave LOLPF an option to purchase information from Bradfield on a contingent basis. At the time it was entered, the agreement did not dramatically

alter the relationship between Bradfield and LOLPF. Prior to the license, Bradfield used LOLPF to manufacture its products. After the agreement, LOLPF used Bradfield's trademarks, formulas, and technology to produce products for Bradfield.

Even if Mr. Scott lacked the authority to bind the corporation to the agreement, a corporation cannot accept the benefits of contract and then avoid its obligations under it by claiming that the contract was improperly authorized. *Weaver v. Metropolitan Life Ins. Co.*, 545 F. Supp. 74, 77 (E.D. Mo. 1982). By accepting and retaining the benefits of a contract, a corporation ratifies the contract and is later estopped from claiming that it is invalid. *Id.* Here, Bradfield performed under the contested agreement for almost five years. During that time, Bradfield allowed LOLPF to use its trademarks and technology to produce natural horticultural products and accepted all compensation LOLPF was required to pay it under the terms of the License Agreement, totaling $577,400. Thus, because Bradfield retained all benefits of the contract, it is now estopped from denying that the contract was properly authorized.

The Court thus finds that the parties formed an agreement to arbitrate because the License Agreement was properly authorized.

**B. Plaintiff's Claim Regarding the Scope of the Arbitration Agreement Must Be Submitted to Arbitration.**

Plaintiff next challenges the validity of the arbitration agreement, arguing that its claim for misappropriation is not within the scope of the arbitration clause. In particular, Plaintiff alleges that the claim arises not from the written contractual relationship between the parties but from their common law legal relationship. The Court holds that this decision is not within its province and is more properly a determination to be submitted for arbitration.

When parties "clearly and unmistakably" agree that the validity of their arbitration agreement and the arbitrability of their dispute are to be determined by an arbitrator, those issues should be submitted to arbitration. *First Options of Chicago v. Kaplan*, 514 U.S. 938, 944 (1995). When parties have no such agreement, these issues must be determined by the district court. *AT&T Technologies, Inc. v. Commc'n Workers of America*, 475 U.S. 643, 649 (1986). Parties "clearly and unmistakably" agree that the arbitrability of their disputes must be determined by an arbitrator when their arbitration agreement requires the application of the American Arbitration Association's ("AAA") Commercial Arbitration Rules. *Fallo v. High-Tec Institute*, 559 F.3d 874, 877-79 (8th Cir. 2009).

Section 8.2 of the License Agreement provides that any dispute arising between the parties "shall" be "determined in binding arbitration." The agreement further provides that such arbitration will be "conducted in accordance with the commercial dispute rules and regulations of the American Arbitration Association." According to the Commercial Arbitration Rules of the AAA, the jurisdiction of an arbitrator, the validity of an arbitration agreement, and the arbitrability of a dispute shall be determined by an arbitrator. AAA Commercial Arb. R. R-7.

The parties have agreed to apply the AAA's Commercial Arbitration Rules. Thus, all issues regarding the arbitrability of their dispute must be determined in arbitration.

## Conclusion

The Court thus finds that a valid License Agreement was formed between Plaintiff Bradfield and Defendant LOLPF. Because the parties' remaining arguments concern the validity and scope of the arbitration agreement, those claims must be submitted to arbitration. Defendants' Motion to Stay Action and Compel Arbitration as to Claims Brought by Bradfield Industries is GRANTED. The Court orders Plaintiff to submit its dispute with Defendant to

9

binding arbitration. This case shall be stayed while arbitration is pending. The parties shall file a joint status report every ninety days.

**IT IS SO ORDERED.**

Date: October 26, 2011　　　　　　　　　　　　　　/s/ Greg Kays_____
　　　　　　　　　　　　　　　　　　　　　　　　GREG KAYS, JUDGE
　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT